José R. Torres Ortiz, etc., demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, demandado; American International Insurance Company of Puerto Rico, Incorporated, tercera demandada y peticionaria.

*Número:* CE-93-331          *Resuelto:* 30 de junio de 1994

*Rafael Fuster Martínez*, de *Martínez-Texidor & Fuster*, abogado de la compañía peticionaria; *Martín González Vázquez*, abogado de los demandantes y recurridos.

El Juez Asociado Señor Alonso Alonso emitió la opinión del Tribunal.

Nos corresponde determinar la cantidad sobre la cual se han de calcular los *intereses presentencia* que deberá pagar un codemandado temerario quien, según lo dispuesto por la sentencia del tribunal de instancia, fue cocausante de los daños reclamados por los demandantes. En particular, si la cantidad que ha de pagar la codemandada temeraria por concepto de interés por temeridad se calcula a base del total de los daños fijados en la sentencia, de cuyo pago son solidariamente responsables todos los codemandados, o sólo sobre la proporción de responsabilidad que el tribunal fijó a ésta para propósitos de la nivelación interna entre los codeudores solidarios.

Por los fundamentos expuestos más adelante, concluimos que la cantidad base que ha de utilizarse es *la proporción* de la cual la codemandada temeraria es responsable con relación a los otros codeudores solidarios.

I

La controversia que hoy nos ocupa tuvo su génesis en una acción en daños y perjuicios instada por los demandantes recurridos como resultado de un accidente automovilístico: el auto en el cual éstos viajaban cayó por un precipicio debido, alegadamente, a una condición de

peligrosidad existente en la carretera. Figuraban como demandados el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.), dueño y encargado de la conservación de la carretera estatal donde ocurrió el accidente; el Municipio de Peñuelas (en adelante Municipio), dueño de un camino municipal cerca de la referida carretera; las Empresas Tito Castro y Ponce Asphalt, quienes al efectuar unas obras de pavimentación de un camino municipal crearon, supuestamente, la condición de peligrosidad en la carretera estatal, y la aseguradora de estas últimas dos (2), American International Insurance Company of Puerto Rico (en adelante American).([1])

Luego de celebrada la vista en su fondo, el 14 de septiembre de 1990 el tribunal de instancia dictó sentencia condenando a los demandados *a pagar "solidariamente"* a los demandantes la suma total de cuarenta y ocho mil dólares ($48,000). Se hizo constar además en dicha sentencia lo siguiente:

> ... [S]e condenan a *todas dichas partes* a pagar las costas y gastos incurridos por los demandantes en el presente pleito y a la tercera demandada American International Insurance Co. of Puerto Rico al pago de $1,500.00 de honorarios de abogado a favor de la parte demandante, más el interés legal a computarse de la fecha de radicación de la demanda hasta la fecha de pago.

> . . . . . . . .

> La negligencia de los demandados se calcula para propósitos de nivelación interna entre ellos, de la siguiente manera:
> a) *Estado Libre Asociado de Puerto Rico* 10%
> b) *Municipio de Peñuelas* 15%
> c) *American International Insurance Co.* 75%. (Énfasis suplido.) Apéndice, *Exhibit* II, págs. 25–26.

El 8 de enero de 1991 American consignó en el tribunal la cantidad de $80,795.76, que entendía le correspondía

---

([1]) Con relación a las terceras demandadas, Empresas Tito Castro y Ponce Asphalt, por orden del Tribunal de Quiebras el caso fue paralizado; no obstante, continuó contra su aseguradora American International Insurance Company of Puerto Rico.

pagar. Es decir, *el 75% de la cantidad total que la sentencia ordenó pagar más los intereses devengados por esta proporción, honorarios de abogado, gastos, costas y sus respectivos intereses.*

Posteriormente, la parte demandante solicitó al tribunal que ordenase a American el pago del 25% remanente de la sentencia, más el interés legal sobre la *totalidad* de la sentencia, calculado éste desde la *fecha cuando se presentó la demanda* hasta la fecha cuando se efectuase el pago. Esto por razón de que la sentencia "condenó a los demandados al pago solidario de la suma total". Previa a la oposición de American, el tribunal de instancia emitió una resolución para conceder un término a los demandados para que consignaran ante el tribunal el balance adeudado, advirtiendo que:

> La sentencia dictada en el presente caso impone la responsabilidad de pago de forma *solidaria* a todos los demandados. Bajo esa responsabilidad la co-demandada American International Ins. Co. queda obligada al pago de la totalidad de la sentencia a los demandantes, sin perjuicio de recobrar de los restantes demandados la parte proporcional que a éstos corresponde y que fue determinado en la sentencia. Mientras no se efectúe el pago total de la sentencia por una u otra demandada, se continuarán acumulando intereses, que *serán también de cargo de todas las partes.* (Énfasis suplido.) Apéndice, *Exhibit* XIV, pág. 53.

Transcurrido el término concedido y previa a la solicitud de los demandantes, el tribunal emitió resolución permitiendo el retiro de los fondos y advirtiendo a los codemandados que de no "pagarse" el restante 25% de la sentencia se expediría mandamiento de ejecución.

Así las cosas, American consignó ante el tribunal la cantidad equivalente al 25% restante de la sentencia (del cual 10% correspondía al E.L.A. y 15% al Municipio) más los intereses calculados a partir de la fecha cuando se *dictó* sentencia hasta que se realizó el pago y *no desde la fecha cuando se presentó la demanda,* según reclamado por los

demandantes. En vista de lo anterior, estos últimos presentaron un escrito ante el tribunal de instancia en el cual rehusaron aceptar, como pago en finiquito, lo consignado por American y solicitaron que se resolviera definitivamente la controversia en torno a la fecha a partir de la cual American estaba obligada a pagar los intereses sobre el 25% remanente de la sentencia.

Conforme le fuera solicitado, el tribunal de instancia celebró una vista el 25 de octubre de 1991 a raíz de la cual permitió a los demandantes retirar los fondos depositados por American sin que esto se considerara una aceptación como pago en finiquito. Quedó por resolverse lo relacionado con la fecha a partir de la cual se debía calcular el interés a ser pagado por American. No fue hasta el 3 de marzo de 1993 cuando, posterior a la ocurrencia de varios trámites procesales,(2) el tribunal emitió una resolución al respecto, consignando que American debería "pagar a los demandantes el interés legal del once por ciento (11%) anual *desde la fecha de radicación de la demanda*". (Énfasis suplido.) Apéndice, *Exhibit* XXVII, pág. 83.

No conforme American solicitó reconsideración en la que alegó, en síntesis, que con respecto al 25% correspondiente a los codeudores solidarios no procedía el pago de intereses a partir de la fecha cuando se presentó la demanda pues éstos, por ser el E.L.A. y un Municipio, por disposición expresa de ley *están exentos* del pago de intereses presentencia.

Finalmente, el tribunal dictó una resolución mediante la cual denegó la reconsideración solicitada e hizo constar que:

Los demandados eran responsables solidariamente. Además American International Insurance Co. of Puerto Rico fue con-

---

(2) Finalmente en diciembre de 1991, tanto el E.L.A. como el Municipio consignaron el 10% y 15% que, respectivamente, les correspondía pagar. La cantidad de intereses consignados por ambos codemandados se calculó a razón de un 7.5% desde la fecha cuando se *dictó* la sentencia.

denada a pagar el interés del 11% desde la radicación de la demanda por temeridad. Pague la American International Insurance Co. of Puerto Rico 11% de interés del 25% de la Sentencia desde la fecha de radicación de la demanda. Apéndice, *Exhibit* I, pág. 5.

Inconforme, American recurre ante nos señalando que:

... Contrario a lo dispuesto por la Regla 44.3(b) de *Procedimiento Civil de Puerto Rico*, el tribunal de primera instancia erróneamente condenó a la peticionaria a pagarle a los demandantes intereses por concepto de temeridad por partidas de la sentencia correspondiente al Estado Libre Asociado de Puerto Rico y a uno de sus municipios. (Énfasis en el original.) Petición de *certiorari*, pág. 8.

Oportunamente, concedimos término a la parte recurrida para que mostrara causa por la cual no debíamos "modificar o revocar" la resolución recurrida. Ambas partes han comparecido. Estamos en posición de resolver y procedemos a hacerlo según lo intimado.

## II

La controversia ante nos se limita a determinar si erró el tribunal de instancia al requerir a los recurrentes el pago de intereses por temeridad, *que son aquellos que en los casos de daños y perjuicios específicamente se acumulan a partir de la fecha cuando se presenta la demanda*, sobre el *total* de la sentencia, no obstante haberse fijado, a los fines de la nivelación entre los deudores solidarios, la negligencia de los recurrentes en un 75%.[3]

En términos generales, los recurrentes alegan que según lo dispuesto por el Art. 1101 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3112, como deudor solidario a quien se le requirió el pago, tienen derecho a oponer ante el

---

[3] Los recurrentes no cuestionan la determinación de temeridad hecha por el tribunal de instancia; la imposición y pago de la totalidad de los honorarios por temeridad, ni de los intereses por temeridad sobre el 75% de la sentencia.

acreedor las excepciones personales de los demás deudores en la proporción de la deuda en que éstos últimos sean responsables.[4] En virtud de lo anterior, alega el recurrente que con respecto al 25% de la sentencia, correspondiente a la negligencia del E.L.A. y el Municipio, puede oponer frente a los demandantes la excepción dispuesta por la Regla 44.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, que del pago de intereses por temeridad exime a éstos últimos. Concluir lo contrario, alega, representaría un enriquecimiento injusto para los demandantes, quienes no hubieran podido reclamar los intereses por temeridad sobre el 25% de la sentencia si hubieran exigido el pago directamente al E.L.A. o al Municipio, además de que le impediría a la recurrente recobrar estos intereses de dichos codeudores.

Por su parte los demandantes recurridos alegan que la sanción por temeridad es independiente de la obligación principal de compensar los daños impuesta por la sentencia y que es en virtud de esta última que se da la relación de solidaridad entre los codeudores y no con respecto a la sanción por temeridad, la cual es individual de la recurrente como parte y se calcula sobre el total de la sentencia.

La solución a la interrogante que nos ocupa surge cuando distinguimos los principios que informan la institución de la solidaridad del objetivo que persigue la imposición de intereses presentencia como sanción por la conducta temeraria de una parte.

■ Una obligación solidaria se caracteriza, entre otras cosas, porque existe una relación jurídica externa entre la parte acreedora y la deudora y otra relación jurídica

---

[4] Específicamente el Art. 1101 del Código Civil, 31 L.P.R.A. sec. 3112, dispone:
"El deudor solidario podrá utilizar contra las reclamaciones del acreedor, todas la excepciones que se deriven de la naturaleza de la obligación y las que le sean personales. De las que personalmente correspondan a los demás, sólo podrá servirse en la parte de deuda de que éstos fueren responsables."

interna entre los distintos acreedores y deudores entre sí. La solidaridad pasiva existe cuando, a pesar de que hay que cumplir una sola vez, cada uno de los deudores tiene el deber de cumplir en su integridad la prestación debida. De modo que con respecto a la relación jurídica externa, como cada deudor solidario está obligado a efectuar íntegramente la prestación debida, el (los) acreedor(es) tiene(n) derecho a dirigirse contra cualquiera de los deudores solidarios o contra todos simultáneamente. La reclamación entablada contra uno de los deudores solidarios no es obstáculo para que posteriormente se dirijan reclamaciones contra los demás, siempre que no se hubiese cobrado la deuda por completo. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1985, T. 1, pág. 151 *et seq.*

■ Específicamente en materia de daños extracontractuales o culpa aquiliana hemos resuelto que cuando sean varios quienes con sus actos u omisiones culpables o negligentes causen un daño, se obligarán solidariamente a repararlo. Esto es sin perjuicio de que en la relación interna entre los deudores la obligación se divida conforme a la proporción en que la culpa o negligencia de cada uno contribuyó a la ocurrencia del daño. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992); Puig Brutau, *op. cit.*

Los cocausantes de un daño responden solidariamente de su reparación en virtud de que cada uno de ellos con sus actos, aun cuando éstos fueran independientes entre sí, cooperó o contribuyó a provocar el daño. En tales circunstancias cada cocausante queda obligado personalmente por razón *de su propia culpa. Arroyo v. Hospital La Concepción*, supra; Puig Brutau, *op. cit.*

La solidaridad entre los cocausantes del daño tiene como resultado proteger con más eficacia al perjudicado, quien puede requerir de cualquiera de ellos la reparación íntegra del daño.

De lo antes expuesto surge con claridad que la solidaridad entre los cocausantes de un daño se da con respecto a la obligación de repararlo.

▮ Ahora bien, conforme lo dispuesto por la Regla 44.3 de Procedimiento Civil, *supra*, la temeridad de un litigante se sanciona mediante la imposición del pago de honorarios de abogado y mediante la imposición de intereses presentencia. En los casos de cobro de dinero, el interés presentencia se calcula desde que surge la causa de acción y en los daños y perjuicios a partir de la presentación de la demanda.

▮ Tanto la imposición de honorarios de abogado como la de interés presentencia tienen como propósito disuadir la litigación innecesaria y alentar las transacciones, mediante la imposición de sanciones a la parte temeraria, que compensen los perjuicios económicos y las molestias sufridas por la otra parte. De esta forma se viabiliza y garantiza la justa, rápida y económica solución del asunto ante la consideración del Tribunal. *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Insurance Co. of P.R. v. Tribunal Superior*, 100 D.P.R. 405 (1972).

▮ Aunque la determinación de temeridad descansa en la sana discreción del juez, una vez éste concluye que la parte actuó temerariamente es imperativa la condena de honorarios de abogado e interés presentencia (cuando éstos procedan).

▮ El concepto "temeridad" ha sido ampliamente definido por nuestra jurisprudencia y, en términos generales, se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Elba A.B.M. v. U.P.R.*, supra; *Hawayek v. A.F.F.*, 123 D.P.R. 526 (1989); *Colondres Vélez v. Bayron*

*Vélez*, 114 D.P.R. 833 (1983); *Insurance Co. of P.R. v. Tribunal Superior*, supra. Por su propia definición, la conducta temeraria solo ocurre una vez se ha iniciado el pleito.

■  La determinación de temeridad tiene *carácter individual*, por lo cual no puede aplicársele la responsabilidad solidaria de los cocausantes de un daño. "[L]a temeridad es una actividad que se proyecta sobre el procedimiento [,] ... afecta[ndo] el buen funcionamiento [del tribunal] y la administración de la justicia [además de sujetar a la otra parte] a la ordalía del proceso judicial" con sus consecuentes gastos. *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718 (1987). El litigante temerario se arriesga al litigar el caso y "[d]ebe asumir, pues *la responsabilidad* por sus actos". (Énfasis suplido.) Íd., pág. 719.

■  De lo antes expuesto resulta forzoso concluir que la obligación que tienen los cocausantes de un daño de repararlo es *distinta e independiente* de la obligación de una parte de satisfacer una condena en su contra por temeridad. Específicamente, la obligación de reparar el daño surge en virtud de que cada uno de los cocausantes que *con sus actos* cooperó en ocasionar el daño, lo que se ha interpretado da lugar a que los cocausantes respondan solidariamente frente al perjudicado. Por su parte, la obligación de satisfacer una condena por temeridad surge como resultado de la conducta de la parte *al litigar*, lo cual es *un suceso independiente al que motivó la condena en daños*.

■  Por ser ambas obligaciones distinguibles e independientes entre sí a la condena por temeridad, no les aplica lo dispuesto por el Art. 1101 del Código Civil, *supra*, que faculta a un codeudor solidario, a quien se le requiera el pago, a oponer ante el acreedor las excepciones personales de los demás codeudores. La aplicabilidad del artículo citado presupone la existencia de una relación de solidaridad con respecto a la obligación concernida.

A idéntico resultado llegamos al aplicar al caso de autos la doctrina expuesta en *Roldán Medina v. Serra*, 105 D.P.R. 507 (1976). Específicamente, en el caso citado resolvimos que al amparo de la Regla 44 de Procedimiento Civil, *supra*, entonces vigente,(⁵) no procedía la imposición de forma solidaria de una condena por la temeridad de los codemandados.

A este respecto señalamos que: "El tribunal sentenciador puede encontrar temeraria a la aseguradora o al asegurado, o a ambos, e imponer el pago de intereses ... [presentencia]. Pero la ley no autoriza que tal imposición sea solidaria y no podemos ir más allá de lo dispuesto en la ley por flagrante que nos parezca la temeridad incurrida." (Escolio omitido.) *Roldán Medina v. Serra*, supra, pág. 515.

En vista de lo anterior, en *Roldán Medina v. Serra*, supra, concluimos que los intereses presentencia o por temeridad que correspondía pagar a la aseguradora se calcularían *sobre la cantidad que le correspondía pagar a ésta bajo la póliza de seguros concernida y no sobre la totalidad de la sentencia.*

Aun cuando en el caso ante nos la condena por temeridad tan solo le fue impuesta a la recurrente, resulta pertinente lo resuelto en *Roldán Medina v. Serra*, supra, con relación a que la cantidad a pagar por concepto de intereses presentencia ha de calcularse sobre la cantidad de la sentencia que "finalmente" el litigante temerario está obligado a pagar.(⁶)

---

(⁵) El contenido de la regla entonces vigente y la actual es básicamente el mismo.

(⁶) Lo señalado antes implica que en tales situaciones el tribunal de instancia está obligado, de no haberlo hecho antes, a distribuir la responsabilidad entre los cocausantes del daño para poder determinar (en caso de que se determine que uno o varios de éstos fue temerario) el monto sobre el cual se pagarán los intereses presentencia. De lo contrario, los referidos intereses serán calculados aplicando la norma general de distribución en partes iguales entre los cocausantes del daño. Véanse: *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 710 (1987); *Vega v. Adm. Servicios Médicos*, 117 D.P.R. 138, 149 (1986); *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 62 (1985); *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992); Arts. 1091 y 1098 del Código Civil, 31 L.P.R.A. secs. 3102 y 3109.

En *Roldán Medina v. Serra*, supra, como explicamos antes, el cálculo se hizo a base del monto de la póliza, lo cual era la cantidad que "finalmente" pagaría allí la aseguradora. En casos como el de marras, en el cual hay varios codeudores (cocausantes del daño) y sólo a uno se le impuso el pago de intereses por temeridad compatible con *Roldán Medina v. Serra*, supra, sólo pagará los intereses presentencia sobre la cantidad que le correspondería pagar conforme a la proporcionalidad en que contribuyó a la ocurrencia de los daños.

La Regla 44.3(b) de Procedimiento Civil, *supra*, excluye al E.L.A., a sus municipios, agencias e instrumentalidades o funcionarios en su carácter oficial de la imposición de *intereses presentencia*. Es importante destacar que lo aquí resuelto es compatible con lo dispuesto en la regla citada. Con respecto al caso ante nuestra consideración, concluimos que los intereses por temeridad que está obligada a pagar la recurrente se habrán de calcular sobre el setenta y cinco por ciento (75%) de la sentencia. Ésta es la proporción de la cual "finalmente" es responsable la recurrente, en virtud de sus actos negligentes.

Concluir lo contrario, es decir, que los intereses por temeridad se calculan sobre el total de los daños fijados en la sentencia nos llevaría, en algunos casos, a la paradójica situación en que la sanción por temeridad fuera mayor que la obligación principal impuesta por la sentencia al litigante concernido.[7]

---

[7] Así, por ejemplo, si asumimos que en una acción en daños y perjuicios, cuyo trámite judicial tomó dos (2) años a partir de la fecha cuando se presentó la demanda, se dictó sentencia que fijaba los daños en cien mil dólares ($100,000) y hubo cinco (5) codemandados privados, cocausantes del daño y que todos litigaron en forma temeraria, la sanción total por temeridad sería de ciento veinte mil dólares ($120,000), al aplicar una taza de interés de doce por ciento (12%). Esto es, la sanción o condena por temeridad sería mayor que la obligación principal establecida por sentencia.

De igual forma, si sólo uno de los codemandados litigó temerariamente y en la sentencia se estableció que éste fue responsable del 5% de los daños, la sanción por temeridad sería de catorce mil dólares ($14,000), mientras que su obligación última con respecto a los daños sería de tan sólo cinco mil dólares ($5,000).

Por los fundamentos antes expuestos, *se dictará sentencia que modifique la resolución recurrida. Con relación a la sanción por temeridad, a la recurrente tan sólo le corresponde pagar el interés legal desde que se presentó la demanda y hasta que se dictó la sentencia, calculado éste a base del 75% de la sentencia.*

El Juez Asociado Señor Negrón García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.